IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FAGNELLI PLUMBING COMPANY, INC.,

      Plaintiff,                               10cv0679

                                                        **ELECTRONICALLY FILED**

    v.

GILLECE PLUMBING AND HEATING, INC.
ET AL.,

      Defendants.


**MEMORANDUM OPINION RE. PARTIES' CROSS-MOTIONS FOR SUMMARY
JUDGMENT (DOC. NOS. 65 & 69)**

*I. INTRODUCTION*

Currently pending before this Court are Cross-Motions for Summary Judgment filed by Plaintiff Fagnelli Plumbing Company, Inc. ("Fagnelli") and Defendants Gillece Plumbing and Heating, Inc., Gillece Services, LP, Thomas Gillece, and Joseph Benz (collectively referred to as "Defendants"). Doc. Nos. 65 & 69, respectively. The Court has reviewed the parties' Motions for Summary Judgment, briefs in support, the parties' concise statement of facts, and responses in opposition to the Motions for Summary Judgment. For the reasons which follow, the Court has determined that there are no genuine issues of material fact present, will grant Plaintiff's Motion for Summary Judgment as to Counts I-III, and will deny Defendants' Motion for Summary Judgment for the reasons set forth below.

*II. FACTUAL BACKGROUND*

The following facts are material and are not contested by the parties.

Defendant Thomas Gillece ("Gillece") is President and CEO of Defendant Gillece Plumbing and Heating, Inc. ("Gillece Plumbing"). Doc. No. 81, ¶ 7. Defendant Joseph Benz is

the General Manager of Gillece Plumbing. Id at ¶ 8. Gillece Plumbing is the general partner of Defendant Gillece Services, LP ("Gillece Services"), a domestic limited partnership organized under the laws of the Commonwealth of Pennsylvania. Id. at ¶ 5. Gillece Plumbing is in the business of providing plumbing heating and cooling services to residential and commercial customers in Western Pennsylvania. Id. at ¶ 6.

Plaintiff, Fagnelli Plumbing Company, Inc. ("Fagnelli"), is a domestic business corporation organized under the laws of the Commonwealth of Pennsylvania and is in the business of providing plumbing, heating and cooling services to residential and commercial customers in Western Pennsylvania. Doc. No. 81, ¶ 1. Fagnelli was incorporated in 1974 and has operated in Western Pennsylvania since 1962. Id. at ¶ 3. Fagnelli Plumbing and Gillece Plumbing directly compete to provide their services to residential and commercial customers in Western Pennsylvania. Id. at ¶ 10.

Plaintiff has been the registrant of the domain name "www.fagnelliplumbing.com" since 2000. Doc. No. 81, ¶ 11. On March 1, 2007, Gillece Plumbing purchased the domain name www.fagnelli.com ("fagnelli.com") from the domain registrar www.GoDaddy.com ("GoDaddy"). Id. at ¶ 13 . Chris Benz registered "fagnelli.com" with GoDaddy the same day. Id. Defendants purchased and registered the fagnelli.com domain name without Plaintiff's knowledge, permission, or consent. Id. at ¶ 14. None of the Defendants were Plaintiff's authorized licensee to register the fagnelli.com domain name. Id. at ¶ 17.

In March 2010, Lee Oleinick ("Oleinick"), a customer of Plaintiff for approximately ten years, attempted to locate Plaintiff's contact information online. Doc. No. 81, ¶¶ 20, 21. Oleinick entered www.fagnelli.com into the URL bar on his web browser. Id. at ¶ 21. Olenick was redirected to a website for Gillece Plumbing and Heating, Inc. which advertised its services.

2

Id. at ¶ 22.

On April 28, 2010, counsel for Plaintiff mailed a letter to Defendants requesting that they cease and desist from having fagnelli.com redirect internet traffic to its website and that Defendants transfer ownership and registration of fagnelli.com to Plaintiff. Doc. No. 81, ¶ 24. Redirection of internet traffic from fagnelli.com ceased on May 4, 2010. Id. at ¶ 26. However, Defendants have not transferred ownership and registration of fagnelli.com to Plaintiff. Id. at ¶ 25.

Plaintiff commenced the instant suit on May 18, 2010, alleging three causes of action against Defendants. Doc. No. 1. Namely, Plaintiff alleged at Count I, cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); at Count II, misleading description under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); and common law trademark infringement and unfair competition at Count III. Doc. No. 1. Defendants filed their Answer and Affirmative Defenses on August 18, 2010. Doc. No. 39. On February 1, 2011, both parties moved for summary judgment on all counts. Doc. Nos. 65 & 69. Responses thereto were filed on February 10, 2011. Doc. Nos. 77 & 78.

### III. LEGAL STANDARD

Summary judgment should be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.1994). In deciding

whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Penn. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Once the moving party has properly supported its showing that there is no triable issue of fact and demonstrated an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one sided that the movant must prevail as a matter of law. It is on this standard that the court has reviewed the Plaintiff and Defendant's Motions for Summary Judgment and their Responses thereto. Doc. Nos. 65, 69, 77, 78.

## IV. DISCUSSION

### A. COUNT I-CYBERSQUATTING

Plaintiff alleges that Defendant breached 15 U.S.C. § 1125(d), also known as the Anti-

Cybersquatting Protection Act.[1]  Doc. No. 1.  Section 1125(d)(1)(A) provides in relevant part that:

> (1)     (A) A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person
>
>          (i)     Has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
>          (ii)     Registers, traffics in, or uses a domain name that –
>
>                (I)     In the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; . . . .

The Anti-Cybersquatting Protection Act ("ACPA") was intended to prevent "the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to profit from the goodwill associated with those trademarks." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  In order to prove a claim under the ACPA, Plaintiff has the burden of establishing that: (1) the name "Fagnelli" is a distinctive mark entitled to protection; (2) Defendant's registration of fagnelli.com is identical or confusingly similar to Plaintiff's mark; and (3) Defendant registered fagnelli.com with the bad faith intent to profit from it.  *Shields*, 254 F.3d at 482, *See also* 15 U.S.C. § 1125(d)(1)(A).

### 1.     *Fagnelli is a Distinctive Mark Entitled to Protection*

The following factors under Section 1125(d)(1)(A)(ii)(I) may be considered in determining whether a mark is distinctive: (A) the degree of inherent or acquired distinctiveness

---

[1] Defendants' Motion to Dismiss was granted as to Count I for Defendants Thomas Gillece,

of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods and services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; and (G) the nature and extent of use of the same or similar mark by third parties. *Shields*, 254 F.3d at 482.

The duration of Plaintiff's business, more than 50 years, suggests the acquired distinctiveness of Plaintiff's name in the services of plumbing, heating, and cooling. It is undisputed that Plaintiff has been incorporated in Pennsylvania since 1974. Doc. No. 81, ¶ 3. Since that time, Plaintiff has been solely in the business of providing plumbing, heating, and cooling services to residential and commercial customers in Western Pennsylvania. Id. at ¶ 3.

As to the duration and extent of advertising and publicity of the "Fagnelli" mark, Plaintiff has submitted evidence that its recent advertising expenditures have been: $40,000 in 2005; $51,000 in 2006, $62,000 in 2007, and $78,000 in 2008. Doc. No. 80, Exhibit 2. Ernest Fagnelli testified that Fagnelli Plumbing has advertised its plumbing, heating, and cooling services in Western Pennsylvania since 1962 and was advertising on the radio, by direct mailings, and in the yellow pages many years before March 1, 2007. Doc. No. 80, Exhibit 2, ¶¶ 4, 5. Fagnelli has also been featured on Plaintiff's own internet website, www.fagnelliplumbing.com, which has been registered since 2000, and prominently displays "Fagnelli" and advertises and offers its services to potential customers. Doc. No. 81. ¶ 11.

The degree of recognition of Plaintiff's mark also suggests the inherent and acquired distinctiveness of its mark. Plaintiff has submitted affidavits from four long-time customers who

6

stated that "the Fagnelli name has become closely associated with plumbing, heating and cooling services in Allegheny County." Doc. No. 68, Exhibits 18-21. The depositions were taken in January 2011 and demonstrate that for some members of the local public, Fagnelli, although a surname, has come to acquire the secondary meaning of a plumbing and heating business, rather than designating the actual people who bear the name. It is consistent with these depositions to conclude that Plaintiff's 5,000 prior customers and other members of the public have come to associate "Fagnelli" with plumbing, heating, and cooling services.

Plaintiff has also submitted an affidavit from Anthony H. Costa, Sr. (Costa) who testified that the "Fagnelli" has come to be closely associated with residential and commercial plumbing, heating and cooling services in Western Pennsylvania. Doc. No. 80, Exhibit 1, ¶ 11. Costa has not been Plaintiff's customer, but has come to associate its name with plumbing services through his work as a plumbing inspector for the Allegheny County Health Department and his position as the Chairman of the Allegheny County Plumbing Advisory Board. Id. at ¶¶ 4, 6. Costa also testified that he has seen Plaintiff's advertisements "for many years prior to 2007." Id. at ¶ 16.

In light of the above, the Court concludes that "Fagnelli" is a distinctive mark entitled to protection.

### 2.     *Registration of "Fagnelli.com is Confusingly Similar to Plaintiff's Mark*

Plaintiff has the burden to demonstrate that its "mark and Defendant's domain are so similar in sight, sound or meaning that they could be confused." *Carnivale v. Staub Design, LLC*, 700 F.Supp. 2d 660, at * 19 (D. Del. 2010). Plaintiff's burden is not, as Defendant argues, to produce evidence of actual confusion, but rather that there is the potential for confusion. Plaintiff has submitted an affidavit from one of its long-time customers that he was confused when trying to access Plaintiff's contact information online. Doc. No. 68, Exhibit 2. Indeed, as

demonstrated by Olenick's affidavit, "fagnelli.com", registered by Defendant, is similar in sight and meaning, and could be confused by potential customers attempting to access the Plaintiff's official website fagnelliplumbing.com. The likelihood of confusion is increased because potential customers were, at one point, redirected to another plumbing company advertising many of the same services to the same geographic area.

### 3. *Defendant's Bad Faith Intent to Profit*

15 U.S.C. § 1125(d)(1)(B)(i) provides a non-exhaustive list of nine factors that the Court may use to determine if Defendant acted with a bad faith intent to profit. Namely:

> (1) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (4) the person's bona fide noncommercial or fair use of the mark in a sit accessible under the domain name:
> (5) the person's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous . . . .

Here, the overwhelming number of the nine facts cut in Plaintiff's favor. It is undisputed that Defendant have no trademark or other intellectual property rights in the fagnelli.com domain name and such domain name is not consistent with Defendant's name, nor have Defendant legitimately used the domain name in connection with offering its services (factors I, II, III). Defendant's use of the Fagnelli domain name has not been used in a noncommercial or fair use in a site accessible through fagnelliplumbing.com (Factor IV).

Defendant contends that the Anti-Cybersquatting Consumer Protection Act was designed only to target individuals who register domain names in order to profit by extortion (See Factor VI). Doc. No. 70, 18. However, the Act's legislative history clearly addresses that "cybersquatters often register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site . . . S. REP. No. 106-140 (1999), 1999 WL 684571, at * 15. Such a situation exists here, where it is undisputed that, at the very least, Defendant registered a domain name which was a variation of a direct competitors official website (Factor V).

Although Defendant disputes that it intended to divert consumers from Plaintiff's website to the Gillece website, Defendant admits that it registered close to 100 other domain names containing in whole or in part the names of many other plumbing, heating, cooling, and electrical contractors in Western Pennsylvania. Doc. No. 81, ¶ 48. All such registrations were done without the knowledge, permission, or consent of the related business owners. Many such websites advertised and offered Defendants' services. Such registration establishes Defendant's pattern of behavior that may have kept potential customers from accessing the legitimate websites of competing businesses or divert customers to its own website. Such redirection could harm the goodwill represented by Plaintiff's mark and create in customers a likelihood of

9

confusion as to the source, sponsorship, affiliation, or endorsement of the site. Defendant has not offered any evidence that registered the domain names for a bona fide reason other than to limit the parties' direct competition. Furthermore, previously discussed, Defendant incorporated "Fagnelli" into their domain name, which is distinctive in the Western District of Pennsylvania (Factor IX). As such, the undisputed material facts demonstrate Defendant's bad faith intent to profit from Plaintiff's goodwill, either for their own commercial gain or to deprive Plaintiff of potential customers. [2]

Accordingly, because the record establishes that Fagnelli is a distinctive mark entitled to protection, Defendant's registration of fagnelli.com is confusingly similar to Plaintiff's mark, and Defendant's bad faith intent in registering the domain name, Plaintiff's Motion for Summary Judgment will be granted as to Count I.

### B. COUNT II-MISLEADING DESCRIPTION UNDER 15 U.S.C. §1125(a)(1)(A)

Plaintiff alleges that Defendants violated 15 U.S.C. §1125(a)(1)(A), which governs the false designation of origin, false descriptions, and dilution. Doc. No. 1. The statute provides in applicable part that:

(a) Civil Action

1. Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading

---

[2] Defendants argue that Plaintiff is required to prove damages under 15 U.S.C.S. § 1125(a). Doc. No. 70, 24. However, Plaintiff has elected to request statutory damages in the amount of $100,000, pursuant to § 1117(d) in addition to an award of attorney's fees pursuant to 15 U.S.C. § 1117(a). Doc. No. 76, 19. The determination of damages will be addressed in a subsequent proceeding.

description of fact, or false or misleading representation of fact, which

> a. is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods [or] services . . . by another person,
>
> * * *
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiff has the burden to establish: (1) A valid and legally protectable mark; (2) Plaintiff owns the mark; and (3) Defendants' use of the mark in a manner likely to confuse customers as to the origin of goods or services. *E.T. Browne Drug Co. v. Cococare Products, Inc.*, 538 F.3d 185 (3d Cir. 2008), *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005), *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 210 (3d Cir. 2000).

### *1. "Fagnelli" Has Acquired a Distinct and Secondary Meaning*

Under Section 1125(d)(1)(A)(ii)(I) and (II), the Court must first determine if "Fagnelli" is a "distinctive or famous mark." Generally, the Lanham Act does not protect a surname unless it is distinctive or famous. *Shields*, 254 F.3d at 476. If, as here, Plaintiff claims an interest in an unregistered mark, Plaintiff must show that it was the first to adopt the mark in commerce, it has continuously used the mark in commerce since its adoption and the unregistered mark is inherently distinctive or has acquired secondary meaning. *Ford Motor Co v. Summit Motor Prods, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991); *See also Dranoff-Perlstein Assoc. v. Sklar*, 967 F.2d 852, 855 (3d Cir. 1992). Personal names can serve as a trademark, but are not inherently

11

distinctive marks. *Tillery v. Leonard & Sciolla*, *LLP*, 437 F.Supp.2d 312, 320 (E.D. Pa. Jun. 9, 2006). Personal names are only treated as protectable trademarks when a Plaintiff demonstrates that they have acquired distinctiveness through secondary meaning. *Tillery*, 437 F.3d at 310, *R.J. Toomey Co. v. Toomey*, 683 F.Supp. 873, 878-79 (D. Mass. 1988), *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 104-105 (2d Cir. 1985).

Plaintiff's mark must have acquired a secondary meaning at the time and place that Defendants began use of the mark, in this case, March 1, 2007, in the Western District of Pennsylvania. *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000), *See also Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978). A personal name acquires secondary meaning as a mark when the name and the business become synonymous in the public mind and the secondary meaning "submerges the primary meaning of the name as a word identifying a person, in favor of its meaning as a word identifying that business." 2 *McCarthy on Trademarks* 13.3 (internal citations omitted). Although there is not a consensus as to the specific elements of secondary meaning, in determining whether "Fagnelli" has the required secondary meaning, the Court will apply the following factors: (1) the extent of sales and advertising leading to buyer associations; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark and trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion. *Commerce*, 214 F.3d at 438, *Scott Paper*, 589 F.2d at 1228.

Plaintiff contends that "Fagnelli" has acquired secondary meaning and "has become closely associated with the plumbing, heating and cooling services that [it] has provided to residential and commercial customers over [50 years] in the Western District of Pennsylvania

geographic area." Doc. No. 66, 16. The duration of Plaintiff's business demonstrates that Plaintiff's name has taken on a secondary meaning of plumbing, heating, and cooling. Plaintiff's continuous use of the mark since 1974, at the latest evidences its distinctive and secondary meaning. Indeed, it seems clear that Defendant would not have registered www.fagnelli.com, had it been associated with a hair salon or other business type unrelated to Defendant's services.

As to the duration and extent of advertising and publicity of the "Fagnelli" mark, as previously noted, Plaintiff has submitted evidence of significant advertising expenditures in Doc. No. 80, Exhibit 2.

Furthermore, as previously noted Plaintiff has also submitted affidavits from four long-time customers who testified that "the Fagnelli name has become closely associated with plumbing, heating and cooling services in Allegheny County." Doc. No. 68, Exhibits 18-21. Such depositions demonstrate that for some members of the local public, Fagnelli, has come to mean plumbing, heating, and cooling services, rather than designating a surname.

In addition to customer testimony, Plaintiff has also submitted an affidavit from Anthony H. Costa, Sr., a local plumbing and heating expert, who testified that the "Fagnelli" has come to be closely associated with residential and commercial plumbing, heating and cooling services in Western Pennsylvania. Doc. No. 80, Exhibit 1, ¶ 11. As discussed earlier Costa has decades of experience in the local plumbing, heating, and cooling industry and testified that Fagnelli has come to represent such services. *See Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, P.C. v. Suisman*, 2006 WL 387289 (D. Conn. Feb. 15, 2006) (names "Suisman, Shapiro" had acquired secondary meaning because [it] identified the plaintiff law firm in the mind of consumers of legal services in the local market).

The use of "Fagnelli" focuses on Western Pennsylvania where the parties are in direct

13

competition for residential and commercial services. Although both parties have internet websites which could reach a wider area, both seek business within the local area. There is no evidence submitted that the name Fagnelli is used in any other plumbing, heating, or cooling business or by other third parties. While Defendants argue that the existence of Fagnelli Industries since 2001 demonstrates that Fagnelli has not come to be associated with plumbing, heating, and cooling, review of that company's information lists "Eric Fagnelli" as the President. Doc. No. 79-11, 3. There is no evidence of what kind of services, if any, Fagnelli Industries offers. Existence of such a company, without more, does not negate Plaintiff's overwhelming evidence that Fagnelli has acquired a secondary meaning in the local market.

In sum, a review of the evidence demonstrates that Plaintiff has established that Fagnelli has acquired the required secondary meaning in the Western District of Pennsylvania. Defendants have not submitted evidence which demonstrates that there are genuine issues for trial. *Commerce*, 214 F.3d at 438.

### 2. *Plaintiff's Ownership of the "Fagnelli" Mark*

Here, Plaintiff's use of the "Fagnelli" mark is senior to Defendants' use because Fagnelli Plumbing was incorporated in 1974, well before Defendant's registration of "fagnelli.com" in 2007. Additionally, Plaintiff registered fagnelliplumbing.com in 2000 before Defendants registered the domain name fagnelli.com. Doc. No. 81, ¶¶ 3, 11, 14, 15. Because of the factors previously addressed, Plaintiff possessed rights to the exclusive use of the "Fagnelli" mark in the plumbing, heating, and cooling industry in the Western District of Pennsylvania.

### 3. *Defendants' Use of "Fagnelli" Establishes a Likelihood of Confusion*

Plaintiff must also establish that Defendants' use of the mark is likely to create

14

confusion.³ Here, Defendants' used the mark to register a domain name, which at one point, redirected potential customers to Defendants' website. Such actions constitute using Plaintiff's mark in commerce.⁴ The United States Court of Appeals for the Third Circuit has set forth the following ten factors that will be used by this Court to determine the likelihood of confusion: (1) similarity; (2) strength; (3) length of Defendant's use of mark without evidence of confusion; (4) intent of the Defendant's adopting the mark; (5) evidence of actual confusion; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; and (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.⁵ *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

"Fagnelli.com" is similar in name to "fagnelliplumbing.com" and is also similar in the

---

³ Likelihood of confusion is generally an issue of fact. *See A & H Sportswear*, 237 F.3d at 207. Here, because discovery is complete and because there are no genuine issues of material fact or credibility determinations, the Court will address the likelihood of confusion based upon the summary judgment standard.

⁴ Multiple district courts have held that a defendant uses a plaintiff's marks in commerce by operating a website. *See Dluhos v. Strasberg*, Civ. A. No. 00-3163, 2005 U.S. Dist. LEXIS 34383 at *22 (D.N.J. June 23, 2005) (holding defendant uses plaintiff's marks in commerce by operating a website); *see also Trade Media Holdings Ltd. V. Huang & Assocs.*, 123 F. Supp. 2d 233, 242 (D.N.J. 2000) (holding "[u]sing a domain name to operate a website is a 'use in commerce' because it affects a plaintiff's ability to offer services.''); *see also Planned Parenthood*, No. 97 Civ. 0629, 1997 U.S. Dist. LEXIS 3338 at *10-11 (S.D.N.Y. Mar. 24, 1997) (noting that establishment of a typical home page on the Internet satisfies Lanham Act's 'in commerce' requirement).

⁵ "Not all factors will be relevant in all cases . . . . A district court should utilize the factors that seem appropriate to a given situation." *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005).

plumbing, heating, and cooling services that were advertised through the websites. The United States Court of Appeals for the Third Circuit noted that "[a]lthough the degree of similarity between the owner's mark and the alleged infringing mark is but one factor in the multi-factor confusion analysis, we have recognized that when products directly compete, mark similarity 'may be the most important of the ten factors in *Lapp*.'" *Checkpoint Systems v. Check Point Software Techs., Inc.*, 269 F.3d 270, 281 (3d Cir. 2001, quoting *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 475 (3d Cir. 1994). Here, the parties offered directly competing services in the same area to the same potential customers. Doc. No. 81. Therefore, the similarity between the mark Defendants registered and Plaintiff's existing mark is highly probative of potential customers' high likelihood of confusion.

Defendants' use of "fagnelli.com" is also similar to Plaintiff's mark, "Fagnelli", not only because the domain name contains the same root word, and because parties are in direct competition in the same geographic area, but also because Defendants used the mark on the internet, the same channel of trade through which Plaintiff seeks to attract potential customers and advertise its services to potential clients. *See Checkpoint Systems v. Check Point Software Techs., Inc.*, 269 F.3d 270, 281 (3d Cir. 2001) ("when products directly compete, mark similarity may be the most important of the ten factors in *Lapp*.").

Defendants contend that Plaintiff "must produce evidence of confusion." Doc. No. 75, pg. 7. However, while this is an important factor, it is only one factor in this Court's analysis of the likelihood of confusion. Plaintiff has submitted evidence of Lee Oleinick's confusion at being redirected to Defendants' website when he attempted to locate Plaintiff's contact information in 2010. Doc. No. 68, Exhibit 2.

The Defendants' intent in adopting the mark is relevant to the extent that it bears on the

16

likelihood of confusion.[6] *See A& H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 226, 232 (3d Cir. 2000) ("a defendant's intent to confuse or deceive consumers as to the product's source may be highly probative of likelihood of confusion."). Defendant has advanced no reason for registering a domain name confusingly similar to Plaintiff's name and the Court finds that Defendant registered the domain name to capitalize on Plaintiff's name and position as a direct competitor in the marketplace. Such a determination is also evidenced by Defendants' registration of close to 100 other domain names of similar direct competitors. Defendants' registration of these domain names are undisputed. Doc. No. 81, ¶¶ 48-137

In sum, it is undisputed that both parties are direct competitors in the Western District of Pennsylvania offering the same services, to the same potential customers, through many of the same channels of trade and advertisement, including their official websites. Therefore, registration of the domain name www.fagnelli.com which led potential customers to www.gilleceplumbing.com, demonstrates a high likelihood of confusion.[7]

Accordingly, because Plaintiff has established the required elements of misleading description as codified in Section 43(a)(1)(A) of the Lanham Act and because such evidence is one-sided for Plaintiff, summary judgment will be granted for Plaintiff as to Count II of its

---

[6] Despite Defendants' contention that Plaintiff was required to establish Defendants' intentional use of a protected mark to confuse customer, intent is relevant to an examination of the likelihood of confusion, but is not a required element. *A & H Sportswear*, 237 F.3d at 226.

[7] This case distinguishable from a recent case out of the United States District Court for the Eastern District of Pennsylvania. *American Infrastructure Inc. v. Zachry Construction Corp.*, (E.D.Pa. Dec. 29, 2010). Here, unlike *American Infrastructure*, Plaintiff has submitted of actual confusion and intent to copy through Defendants' registration of numerous domain names of direct competitors.

Complaint.[8]

### C. COUNT III-COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff states identical claims against Defendants for trademark infringement and unfair competition under Pennsylvania common law in Count III as the claim brought under Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(d)) and as set forth in Counts I- II. Plaintiff's common law claims for trademark infringement and unfair competition are governed by 15 U.S.C. § 1125(d). *See A & H Sportswear*, 237 F.3d at 210. Because the Court finds that Plaintiff is entitled to summary judgment for claims brought under Section 43(a)(1)(A) of the Lanham Act, Plaintiff's Motion for Summary Judgment will be granted for Plaintiff on Count III.[9]

### V. CONCLUSION

Accordingly, for the reasons previously set forth, Plaintiff's Motion for Summary Judgment (Doc. No. 65) will be granted as to Counts I-III of Plaintiff's three count Complaint.[10] Defendants' Motion for Summary Judgment (Doc. No. 69) will be denied.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc:     All Registered ECF Counsel and Parties

---

[8] Determination of damages against Defendants need not be addressed in the present Opinion and will be addressed in a subsequent proceeding.

[9] Determination of damages against Defendants will be addressed in a subsequent proceeding.

[10] An appropriate permanent injunction will be entered forthwith.